UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Rawle Daisley, *on behalf of himself and all others similarly situated*, <br>　　　　　　　　　　*Plaintiff*, <br><br>　　v. <br><br>West Creek Financial, Inc. <br>　　　　　　　　　　*Defendant*. | Civil Action No:. <br><br> **COMPLAINT** |

Rawle Daisley, on behalf of himself and all others similarly situated, by and through counsel, alleges as follows:

## NATURE OF ACTION

1. This class action seeks to vindicate the rights of New York consumers who have been victimized by Defendant West Creek Financial, Inc. ("West Creek Financial") by means of deceptive, unfair and deficient Rent-To-Own Agreements.

2. Plaintiff brings claims pursuant to New York Personal Property Laws § 500 *et seq.*, New York General Business Law § 349, and recission.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to the Class Action Fairness Act, codified at 28 U.S.C. § 1332(d) because this case is a class action, the class has more than 100 members, the amount in controversy exceeds $5,000,000, and Plaintiff is a citizen of a different state than Defendant.

4. Declaratory relief is available per 28 U.S.C. §§ 2201 and 2202.

5. The Court has supplemental jurisdiction over state claims per 28 U.S.C. § 1367.

6. Venue is proper in this district per 28 U.S.C. § 1391, as acts, omissions and transactions that give rise to this action occurred, in substantial part, in this district.

7. Venue is also proper in this district because Plaintiff lives in this district, Defendant conducts business in this district and the injury to the Named Plaintiff occurred in this district.

## PARTIES

8. At all relevant times, Plaintiff Rawle Daisley has resided in the city and county of Queens, New York.

9. Plaintiff is a "consumer" as that term is defined under New York Personal Property Law ("NYPPL") § 500(3) and New York General Business Law § 349.

10. Defendant West Creek Financial was and is a Virginia foreign business corporation authorized to do business in New York, with a principal place of business in Virginia.

11. West Creek Financial was and is a Merchant as that term is defined in NYPPL § 500(5).

## NAMED PLAINTIFF'S EXPERIENCE

12. Mr. Daisley personally visited electronics vendor "Electronics For Best" on or about May 18, 2017 at its storefront in Jamaica, NY.

13. At that time, Mr. Daisley expressed interest in certain consumer electronics he was interested in acquiring, including a laptop computer and stereo system speakers.

14. Mr. Daisley and the salesperson at Electronics For Best agreed at that time on a price of $1,500 for laptop and speakers (and related cables).

15. The items were for personal, non-commercial use.

16. Mr. Daisley was told it was possible to finance the purchase and to pay no finance charges of any kind if he paid the full $1,500 within 90 days.

17. Mr Daisley was further informed that if he did not pay in full within 90 days that he would pay interest on the unpaid balance until it was paid off.

18. Mr. Daisely was also informed by Electronics for Best that in order to proceed with the purchase, Electronics For Best needed to make a copy of his driver's license.

19. Mr. Daisely provided his driver's license and it was photocopied by the salesperson.

20. The salesperson then asked Mr. Daisley to sign the photocopy of the driver's license.

21. When Mr. Daisley asked why this was necessary, the salesperson explained that this was for purposes of "verification" of his identity.

22. Mr. Daisley was also required to sign a receipt of merchandise document (despite the fact that his merchandise was not received at that time).

23. Mr. Daisley did not sign any other documents of any kind.

24. Mr. Daisley was told that his items would be available for pick up the following day.

25. He returned the following day, May 19, 2018, and picked up his items.

26. Again, he was not asked to and did not sign any additional documents.

27. Mr. Daisley was told that the company that was financing the purchase would be in touch.

28. Shortly after receiving the merchandise he become aware that his bank account was being electronically debited in the amount of $112.50 every two weeks.

29. Mr. Daisley contacted his bank in June 2017 and was informed that the charges were being made by Defendant West Creek Financial.

30. Mr. Daisley then, also in June 2017, contacted West Creek Financial, which confirmed that it was charging him in connection with the merchandise.

31. Mr. Daisley called West Creek Financial on September 20, 2017 and again on October 9, 2017, to inquire about paying off his existing balance.

32. He was informed by West Creek Financial that he was required to pay a total of $2,700 in order to bring his balance to zero.

33. On the October 9, 2017 call, Mr. Daisley, requested a copy of his contract.

34. West Creek Financial faxed him the "Lease Agreement with Ownership Option attached hereto as Exhibit A (hereafter, the Rent-To-Own Agreement).

35. Although the document contains a digital signature purporting to be Mr. Daisley's, the signature is not Mr. Daisley's (digital or actual) signature.

36. Mr. Daisley at no time signed the document, digitally or otherwise, nor signed a digital pad for purpose of having a digital image of his signature added to the document, nor took any other action for the purpose of signing the document.

37. The Rent-To-Own Agreement is a standard, boilerplate form used by Defendant in its transactions with consumers in New York.

38. As set forth below, it fails to comply with numerous aspects of New York law, and is materially deficient and unlawful, both in terms of its substantive terms and its disclosures to consumers of their rights, which not only fail to inform consumers of their rights and omit statutorily required information, but which affirmatively misstate consumer's rights.

39. West Creek Financial imposes these unlawful and deficient terms upon New York consumers that enter into transactions in which West Creek Financial purports to be the Lessor/Owner.

40. West Creek Financial did not provide Mr. Daisley with receipts for any of his periodic payments.

41. This is not an isolated instance. To the contrary, is it West Creek Financial's formal policy and its practice not to provide any such receipts, absent a consumers specific request.

42. The laptop Mr. Daisley purchased was defective and suffered from a variety of maladies, including frequently freezing repeatedly without warning and disconnecting from local networks.

43. Defendant's Rent-To-Own Agreement is a "Retail Purchase Agreement" as the term is defined in NYPPL § 500(6).

44. Mr. Daisley, who had paid Electronics for Best for a separate warranty, brought the laptop back to Electronics for Best for repair, but Electronics for Best did not successfully fix the laptop, which remains defective and, inter alia, regularly freezes, and disconnects from all networks, and which requires rebooting multiple times per day.

45. At no time was Mr. Daisley made aware that, as set forth herein, Defendant West Creek Financial was required under New York State law to maintain the financed merchandise in working order and to provide substitute merchandise or a loaner if the financed merchandise could not quickly be repaired.

46. Had Mr. Daisley known this, he would have taken advantage of the statutory warranty and required West Creek Financial to repair or replace the laptop.

## CLASS ALLEGATIONS

47. The plaintiff, Rawle Daisley, brings this action on behalf of not only himself, but also on behalf of a class of all other persons similarly situated, pursuant to Fed. R. Civ. P. Rule 23.

48. Plaintiff seeks to represent the following class defined as follows:

> (1) Consumers;
>
> (2) who transacted for merchandise;

(3) in a transaction in which West Creek Financial purports to be the Lessor/Owner;

(4) pursuant to a "Lease Agreement With Ownership Option" that is substantively similar in form and boilerplate terms to the Agreement attached hereto as Exhibit A;

(5) and in which the purchase occurred at a vendor's New York location or occurred online where the vendor is incorporated and/or headquartered in New York.

49. Excluded from the Class is:
   a. anyone employed by counsel for Plaintiff in this action; and
   b. any Judge to whom this case is assigned, as well as his or her immediate family and staff.

50. The Class consists of two subclasses:
   a. an NYPPL §500 *et seq.* Class that includes all Class Members who transacted for the subject merchandise within four years of the filing of the Complaint; and
   b. an NYGBL § 349 Class that includes all Class Members who transacted for the subject merchandise within 3 years of the filing of the Complaint.

*Numerosity*

51. The Rent-To-Own Agreement at issue in this case is a boilerplate document whose language does not materially vary from one consumer to the next, and which upon information and belief purports to govern transactions with thousands of consumers.

52. The Class, on information and belief, includes thousands of members and are sufficiently numerous that joinder of all members is impractical.

*Existence and Predominance of Common Questions*

53. Common questions of law and fact exist as to Plaintiff and all members of the Class and predominate over questions affecting only individual Class members.

54. These common questions include:

    a. whether the provisions of the standardized Rent-To-Own Agreement used by Defendants complies with New York Personal Property Law § 500-507 ("Rental–Purchase Agreements"), including *inter alia*, the provisions requiring certain standard disclosures in all such transactions and the provisions setting limits on the amounts chargeable to consumers who wish to exercise their early purchase options;

    b. whether Defendant's practices with regard to payment receipts violate New York Personal Property Law §§ 500-507;

    c. whether Defendant's failure to provide warranties for the merchandise that is the subject of its Rent-to-Own Agreement violates New York Personal Property Law §§ 501-507;

    d. whether Defendants engaged in deceptive conduct in violation of the GBL § 349;

    e. whether Defendants' misconduct was willful and whether, in addition to their statutory and actual damages, Plaintiff and the other Class members are entitled to treble and/or punitive damages.

*Typicality*

55. Plaintiff's claims are typical of the claims of the Class because, among other things, Plaintiff is:

    a. a Consumer;

    b. who transacted for merchandise;

    c. in a transaction in which West Creek Financial purports to be the Lessor/Owner;

    d. pursuant to a "Lease Agreement With Ownership Option" that is substantively similar in form and boilerplate terms to the Agreement attached hereto as Exhibit A;

    e. and in which the purchase occurred at a vendor's New York location or occurred online where the vendor is incorporated and/or headquartered in New York.

56. Put differently, all of the claims are based on the same factual and legal theories and the Plaintiff, together with each class member, has been subjected the same false, deceptive and unfair communications and acts by Defendants.

57. Thus, Plaintiff's claims are typical of the claims of the class.

*Adequacy*

58. Plaintiff will fairly and adequately represent the interests of the Class Members. Plaintiff's interests do not conflict with the interests of the members of the Class he seeks to represent.

59. Plaintiff has retained counsel experienced in prosecuting class actions and in consumer protection matters. There is no reason why this Plaintiff and counsel will not vigorously pursue this matter.

*Superiority*

60. The class action is superior to other available means for the fair and efficient adjudication of the claims at issue herein.

61. The damages suffered by each individual Class Member may be limited.

62. Damages of such magnitude are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.

63. Further, it would be virtually impossible for the members of the Class to effectively redress the wrongs done to them individually. Even if the members of the Class themselves could afford such individual litigation, the court system could not.

64. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case.

65. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

66. In the alternative, the Class may be certified because:

    a. the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant;

    b. the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

    c.  Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## FIRST CAUSE OF ACTION
*(New York Personal Property Laws Secs. 500-507)*

67. Plaintiff realleges and incorporates by reference all of the allegations contained in the above paragraphs.

68. Pursuant to NYPPL § 501, Defendant's Rent-To-Own Agreement is required to inform consumers of numerous substantive rights.

69. For example, NYPPL § 504 governs early purchase options and in relevant part states as follows:

> 1. The consumer has the right to acquire ownership of the merchandise at any time by tendering to the merchant all past due payments and fees and an amount equal to the cash price stated in the rental-purchase agreement multiplied by a fraction that has as its numerator the number of periodic payments remaining under the agreement and that has as its denominator the total number of periodic payments… 2. In a clear and conspicuous manner on the consumer's receipt for every periodic payment, the merchant shall, in connection with a consumer's rights under this section, provide the consumer with a written statement of:
> (a) the total amount the consumer would have to pay to acquire ownership of the rental merchandise if the consumer makes all regularly scheduled payments remaining under the rental-purchase agreement; and
> (b) the total amount the consumer would have to pay to acquire ownership of that merchandise pursuant to subdivision one of this section.

70. Defendants' Rent-To-Own Agreement does not comply with these provisions.

71. Rather, Defendant's Rent-To-Own Agreement states as follows:

> Cash Purchase Option: Any time after you make the first payment and any time before the end of this Lease, you may gain ownership of the Property by (a) If within ninety (90) days of

> delivery, tendering the difference between $1,500 plus the Initial Payment, less the amount paid or by (b) if more than ninety (90) days of delivery, tendering $2,700 plus the Initial Payment, less the amount paid and up to a thirty-five percent (35%) discount off remaining balance.   In addition, to complete the cash purchase option, all outstanding costs, fees and charges must be paid. . ."

Exhibit A at ¶ 6.

72. This formula is non-compliant and materially inferior to the formula required under New York Personal Property Law § 504(1).

73. For example, under New York's statutorily mandated formula, Mr. Daisley – who sought to pay his full balance at month 5 of his 12 month contract - would have owed his first five months worth of payments (5 x $225, *i.e* $1125) plus "an amount equal to the cash price stated in the rental-purchase agreement", *i.e.* $1,500 "multiplied by a fraction that has as its numerator the number of period payments remaining under the agreement", *i.e.* 14 (bi-monthly payments) and "that has as its denominator the total number of periodic payments", *i.e.* 24.

74. Thus, application of New York's statutorily required formula to Mr. Daisley is as follows:

$1125 + (1,500 X 14/24)= $1,999.99

75. However, pursuant to the Rent-To-Own Agreement, West Creek Financial was purportedly entitled to (and, in fact, demanded) $2,700.00.

76. Nor is it West Creek Financial's policy and practice, absent special request, to mail or email its New York customers a receipt for each periodic payment, much less one that "in a clear and conspicuous manner" provide a receipt that includes "the total amount the consumer would have to pay to acquire ownership of the rental merchandise if the consumer makes all regularly scheduled payments" nor "the total amount the

consumer would have to pay to acquire ownership of that merchandise pursuant to" § 504(1).

77. Pursuant to § 501(12), consumers are entitled to "a statement of the consumer's right to acquire ownership as provided in § 504, including substantially the following statement: "The attached chart shows the amounts required to exercise your early purchase options after each renewal payment, assuming you make each periodic payment on time"

78. Section 501(12) further requires that "The rental-purchase agreement shall be accompanied by a chart showing the amount required to exercise the consumer's early purchase option after each periodic payment if payments are made as scheduled."

79. As can be seen from Exhibit A hereto, Defendant West Creek Financial failed to comply with this requirement as its standard form contract sets forth a materially different and inferior re-purchase formula than set forth in § 504 and, in addition, does not contain the required chart.

80. NYPPL § 504(b) states as follows:

> Maintenance of merchandise.
> 1. The merchant shall maintain the property subject to the rental-purchase agreement in good working order while the agreement is in effect without charging any fee to the consumer in addition to the regularly scheduled rental payments set forth in the rental-purchase agreement.
> 2. By the end of the second business day following the day on which the merchant received notice from the consumer that the property is not operating properly, the merchant shall repair or replace the property without any fee to the consumer in addition to the regularly scheduled rental payments set forth in the rental-purchase agreement.
> 3. If a repair or replacement cannot be immediately effected, the merchant shall temporarily substitute property of comparable quality and condition while repairs are being effected. If repairs cannot be completed to the reasonable satisfaction of the consumer within thirty days after the merchant receives notice from the consumer or within a

>longer period voluntarily agreed to by the consumer, the merchant shall permanently replace the property.
>4. All replacement property shall be the same brand, if available, and comparable in quality, age, condition, and warranty coverage to the replaced property. If the same brand is not available, the brand of the replacement property shall be agreeable to the consumer, provided, however that any request by the consumer shall not be unreasonable.
>5. All of the consumer's and merchant's rights and obligations under the rental-purchase agreement and this title that applied to the property originally subject to the rental-purchase agreement shall apply to any replacement property.
>6. The consumer shall not be charged, or held liable for, any pro rata portion of a periodic payment for any period of time greater than one full day and each full day thereafter during which the property that is the subject of the rental-purchase agreement or any property substituted for it pursuant to this section is not in good working order.

NYPPL §§ 504(b)(1) through (6).

81. Pursuant to NYPPL § 501(16), West Creek was required to provide "a description of the merchant's obligations to maintain the rental merchandise and to repair or replace rental merchandise that is not operating property, as provided in § 504(b)" (sections (1) through (6) of which are excerpted above).

82. In stark contrast to these statutorily imposed warranty/maintenance obligations, Defendant's Rent-To-Own Agreement states: "During the term of this Lease, you are responsible for maintaining the Property in its original condition, ordinary wear and tear excepted." Exhibit A, at ¶ 7.

83. Pursuant to NYPPL § 502, "Every rental purchase agreement shall indicate that a consumer at his or her request shall be permitted to review a completed rental-purchase agreement for up to forty-eight hours prior to signing."

84. Defendant West Creek Financials' Rent-To-Own Agreement contains no such provision.

85. As a result of Defendants' violations of NYPPL §§ 500-507, Plaintiff is entitled to actual damages, statutory damages of one thousand dollars per consumer, reasonable attorney's fees, and costs.

## SECOND CAUSE OF ACTION
*(New York State General Business Law § 349)*

86. Plaintiff hereby restates, realleges, and incorporates by reference all foregoing paragraphs.

87. Pursuant to NYPPL §507(3), the violations of NYPPL § 500 *et seq.* set forth above are also violations of NYGBL § 349.

88. Even were this not so, each of the deceptive acts and practices set forth above, including but not limited to each deceptive act and practice set forth in the First Cause of Action, was committed in the conduct of business, trade, commerce or the furnishing of a service in this state and constituted a violation of NYGBL § 349 independent of whether it also constituted a violation of any other law.

89. Each of these actions was consumer oriented and involves misleading conduct that is recurring and has a broad impact upon the public.

90. Specifically, and without limitation, the following acts are false and deceptive: misinforming consumers as to their early purchase rights;

    - Misinforming consumers as to their warranty rights and failing to provide statutorily required warranties;
    - Demanding and attempting to collect money to which it was not entitled;
    - Collecting money to which it was not entitled.

91. Plaintiff and all others similarly situated have been damaged thereby.

92. As a result of Defendant's violations of § 349, Plaintiff and each other member of the Class are entitled to declaratory judgment; an injunction against the offending conduct, actual damages, treble damages of $1,000 per class member, punitive damages, costs and attorneys' fees.

### THIRD CAUSE OF ACTION
### RESCISSION

93. Plaintiff hereby restates, realleges, and incorporates by reference all foregoing paragraphs.

94. As set forth above, Defendant regularly makes false statements to consumers regarding consumers' rights, including with regard to consumer's early purchase and warranty rights.

95. Defendant likewise engages in concealment, non-disclosure, and affirmative misrepresentation with regard to these consumer rights.

96. Defendant does so intending to deceive consumers.

97. These false statements, misrepresentations, concealments and non-disclosures cause injury, including pecuniary injury to consumers, including the named plaintiff herein.

98. Accordingly, Plaintiff is entitled to rescission of the subject transaction.

**WHEREFORE** Plaintiff and members of the Class respectfully request that this Court award:

A. An order certifying this case as a class action under Fed. R. Civ. P. 23, naming Plaintiff as Class Representative, and appointing attorneys as Class Counsel;

B. A judgment declaring that Defendant has committed the violations of law alleged in this action;

C. A permanent injunction barring using of the form agreement attached hereto as Exhibit A for New York transactions and requiring that Defendant comply with NYPPL § 500 *et seq*;

D. A judgment declaring the practices outlined herein unlawful and declaring all New York transactions for which a form materially similar to the form attached hereto as Exhibit A to be null, void and rescinded;

E. Actual damages;

F. Statutory damages;

G. Treble damages;

H. Punitive damages;

I. Attorney's fees, litigation expenses and costs;

J. Rescission;
   and

K. Such other and further relief that may be just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

Dated: June 19, 2018
       New York, NY

SCHLANGER LAW GROUP LLP

*/s/ Daniel A. Schlanger*

Daniel A. Schlanger
9 East 40th Street
Suite 1300
New York, NY 10016
T. (212) 500-6114
F. (646) 612-7996
dschlanger@consumerprotection.net

*Attorneys for Plaintiff*